PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

In Re: LISA M. KIRKLAND,

*Debtor.*

EDUCATIONAL CREDIT MANAGEMENT
CORPORATION,

*Plaintiff-Appellant,*

v.

LISA M. KIRKLAND,

*Defendant-Appellee.*

No. 09-1379

Appeal from the United States District Court
for the Western District of Virginia, at Lynchburg.
Norman K. Moon, District Judge.
(6:09-cv-00002-nkm; 01-00627-WA1)

Argued: January 26, 2010

Decided: March 12, 2010

Before MOTZ, KING, and AGEE, Circuit Judges.

Reversed by published opinion. Judge Agee wrote the majority opinion, in which Judge Motz joined. Judge King wrote a dissenting opinion.

## COUNSEL

**ARGUED**: Troy A. Gunderman, EDUCATIONAL CREDIT
MANAGEMENT CORPORATION, Oakdale, Minnesota, for
Appellant. Stephen Eldridge Dunn, STEPHEN E. DUNN,
PLLC, Forest, Virginia, for Appellee. **ON BRIEF:** James C.
Joyce, Jr., JAMES C. JOYCE, JR., PLC, Roanoke, Virginia,
for Appellant.

---

## OPINION

AGEE, Circuit Judge:

Educational Credit Management Corporation ("ECMC")
appeals the district court's determination that the bankruptcy
court had jurisdiction to determine the post-petition interest
and collection costs to which ECMC was entitled as the result
of a default on a student loan that occurred after the Chapter
13 estate was closed and the debtor discharged. For the rea-
sons set forth below, we conclude the bankruptcy court lacked
subject matter jurisdiction as to the issues of collection costs
and post-petition interest in this case, and we reverse the judg-
ment of the district court.

I.

On eight separate occasions between 1989 and 1995, Lisa
M. Kirkland borrowed money from Sallie Mae in order to
finance her college education. ECMC, United Student Aid
Funds, Inc. ("USAF"), and the New Jersey Higher Education
Assistance Authority ("NJHEAA") guaranteed the loans.

In February 2001, Kirkland filed a Chapter 13 bankruptcy
petition in the United States Bankruptcy Court for the West-
ern District of Virginia, properly listing all of the loans as
debts. Sallie Mae filed five proofs of claim, three of which

were allowed: claim no. 6 in the amount of $8,126.72 (guaranteed by USAF), claim no. 7 in the amount of $2,680.59 (guaranteed by NJHEAA), and claim no. 9 in the amount of $4,737.27 (guaranteed by ECMC). At the time Kirkland filed her petition, none of the student loans were in default.

Kirkland's approved Chapter 13 bankruptcy plan provided for sixty monthly payments of $700. The plan was designed so that Kirkland would pay the three Sallie Mae loans in full, except for any interest that accrued on the loans during the pendency of the bankruptcy. Kirkland timely made 55 monthly payments, totaling $38,500.00, to the Chapter 13 Trustee.

For reasons not entirely clear from the record, the Chapter 13 Trustee scheduled lower amounts to be paid on each of Sallie Mae's claims than what the bankruptcy court had approved based on the filed proofs of claim. Compounding this error, sums that were scheduled to be paid toward claim no. 9 were actually paid toward claims no. 6 and 7, causing an overpayment on those claims, and no payment on claim no. 9. Sallie Mae refunded the amount that had been overpaid on claims no. 6 and 7 to the Chapter 13 Trustee. Because the Chapter 13 Trustee's records incorrectly showed that all the claims in the bankruptcy estate had been paid in full, he refunded the money received from Sallie Mae directly to Kirkland and did not require her to make the final five plan payments. Instead, the Chapter 13 Trustee filed a final report, the order of discharge was entered, and, in February 2006, the case was closed.[1]

Following the close of her bankruptcy proceeding, Kirkland

[1]It is not clear from the record why the Trustee used lower claim amounts, as no order reduced the loan amounts as filed in each of Salle Mae's allowed claims. Nor is it clear from the final report how the Trustee accounted for the supposed overpayment on claims no. 6 and 7, or the refund that Sallie Mae paid to the bankruptcy estate.

began receiving notices that she owed Sallie Mae approximately $5,000. Kirkland sought additional documentation, and Sallie Mae asserted that she still owed the entire principal loan amount reported in claim no. 9, plus the accrued interest.

In June 2007, Kirkland filed an adversary proceeding against ECMC in the bankruptcy court, styled a Complaint to Determine Dischargeability of Debt ("Complaint").[2] Kirkland asserted that since the loan had been properly listed as part of her Chapter 13 plan, it should have been paid in full by the Chapter 13 Trustee during the pendency of her bankruptcy estate, and the claim was thus discharged as part of the bankruptcy proceeding. Kirkland specifically acknowledged in her Complaint "that interest that accumulated during the term of the Chapter 13 would be non-dischargeable," and that she was responsible for paying the post-petition interest that had accrued on the loan. Accordingly, she asked the court to determine only that the loan principal had "been paid in full and discharged except to the extent of any interest that may have" accrued during the bankruptcy proceeding. J.A. 5.

ECMC responded that claim no. 9 had not been paid during Kirkland's bankruptcy proceeding and consequently the court could not declare that the loan had been discharged.[3] ECMC further maintained that the bankruptcy court could not now adjudicate the student loan obligation as discharged unless it made a finding of undue hardship, which Kirkland had neither pled nor shown. Neither Kirkland nor ECMC asked the bankruptcy court to make any determination as to post-petition interest or collection costs.

In its memorandum and judgment, the bankruptcy court concluded that it had jurisdiction "over this matter" pursuant

---

[2]Sallie Mae appeared as a co-defendant until the appeal to the district court. For ease of reference, the opinion will refer simply to ECMC.

[3]ECMC also averred that Sallie Mae had assigned the student loan debt to ECMC, who was now the holder of the debt.

to 28 U.S.C. §§ 1334(a) and 157(a), also noting that the proceeding was a "core proceeding" under § 157(b)(2)(A). The court then noted that student loans are nondischargeable in bankruptcy absent proof of undue hardship, found that no amount had been paid on Kirkland's loan during her bankruptcy, and held that Kirkland owed ECMC the full amount of principal due on the loan, $4,737.27. It observed that the Chapter 13 Trustee "cannot unilaterally reduce the amount of an allowed claim," J.A. 86, and that although Kirkland "was not at fault for the return of funds to the chapter 13 trustee, she cannot keep the money refunded to her and, at the same time, claim that she paid it to Sallie Mae." J.A. 87.

The bankruptcy court then stated that Kirkland and ECMC "agree that some amount of interest has accrued to date since the filing of" the bankruptcy petition. J.A. 87. It observed that Kirkland had not disputed the sum ECMC included in the documentation it filed with the court, and so it awarded ECMC $184.40 in post-petition interest.[4] Lastly, the court stated that it was not awarding ECMC any collection costs because ECMC "has not provided any statutory or factual basis for the accrual of" such costs. J.A. 87.

ECMC filed a motion to alter or amend, contending that it should have been awarded more than $184.40 in post-petition interest because that amount ignored the full amount of "interest incurred during the Bankruptcy and the capitalized interest since." J.A. 94. In addition, ECMC asserted it was entitled to collection costs under the applicable statute and implementing regulations, which set a fixed amount of costs to be imposed.[5]

---

[4]ECMC filed an exhibit in the bankruptcy court reflecting the principal due on the loan to Kirkland of $4,737.27, but also showing interest of $184.40. It is unclear from the record why ECMC claimed any amount of post-petition interest in Kirkland's discharge proceeding, or what the amount of $184.40 represented.

[5]Specifically, ECMC contended the bankruptcy court lacked discretion to deny collection costs because the federal regulation implementing 20

The bankruptcy court denied ECMC's motion and held that although ECMC was legally entitled to post-petition interest, it was also responsible for providing the court with sufficient information to determine the amount of interest due. Consequently, it held that because ECMC had only provided documentation of accrued interest in the amount of $184.40, that was the only amount ECMC could recover. In addition, the court held that under its reading of the relevant statute and federal regulations, ECMC was only entitled to "reasonable" collection costs based on whatever amount would be incurred by a prudent creditor under the circumstances. Finding that ECMC had failed to act as a prudent creditor during the pendency of Kirkland's bankruptcy, the court held ECMC was partially responsible for the events resulting in post-petition default on the loan and concluded that no collection costs were appropriate.

On appeal to the district court, ECMC asserted for the first time that the bankruptcy court, and now the district court, lacked subject matter jurisdiction to make any determination as to either post-petition interest or collection costs. The district court rejected that contention, for the reasons discussed below. As did the bankruptcy court's, the district court's substantive analysis focused on ECMC's failure to prove that it was owed a greater amount of post-petition interest than $184.40. The district court also affirmed the bankruptcy court's determination to award no collection costs, observing that although a creditor was entitled under 20 U.S.C.

---

U.S.C. § 1091a(b)(1) — 34 C.F.R. § 682.410(b)(2) — requires the assessment of actual collection costs or, in the alternative, the lesser of two calculations (1) the amount the same borrower would be charged for collection costs under the formula provided in 34 C.F.R. § 30.60, or (2) the amount the borrower would be charged for collection costs if the loan were held by the Department of Education. ECMC argued the bankruptcy court mistakenly relied upon a definition of "reasonable collection costs" that did not apply to 34 C.F.R. § 682.410(b)(2).

§ 2091a(b)(1) to reasonable collection costs, the statute did not guarantee a specific amount.

ECMC noted a timely appeal and this Court has jurisdiction based on 28 U.S.C. § 158(d).

## II.

When reviewing a decision by a district court in its capacity as a bankruptcy appellate court, this Court examines factual findings of the bankruptcy court for clear error and reviews legal conclusions de novo. *See IRS v. White* (*In re White*), 487 F.3d 199, 204 (4th Cir. 2007). Whether subject matter jurisdiction exists is a question of law that we also review de novo. *See New Horizon of NY LLC v. Jacobs*, 231 F.3d 143, 150 (4th Cir. 2000).

## III.

On appeal, ECMC contends that the bankruptcy court, and consequently the district court, lacked subject matter jurisdiction to determine or award collection costs and post-petition interest. Specifically, ECMC asserts the bankruptcy court "lacked authority to discharge the post-petition interest and collection cost part of the student loan debt" because those obligations arose after Kirkland filed her bankruptcy petition and were unrelated to the loan principal represented by claim no. 9. Appellant's Br. 21.

Although ECMC failed to raise the issue of subject matter jurisdiction in the bankruptcy court, we can always consider whether subject matter jurisdiction exists. *New Horizon*, 231 F.3d at 150. Subject matter jurisdiction cannot be forfeited or waived, and can be raised by a party, or by the court *sua sponte*, at any time prior to final judgment. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006). Accordingly, ECMC's failure to raise the issue of subject matter jurisdiction in the bankruptcy court is not dispositive.

"Federal bankruptcy courts, like the federal district courts, are courts of limited jurisdiction." *Canal Corp. v. Finnman* (*In re Johnson*), 960 F.2d 396, 399 (4th Cir. 1992). Two statutes govern jurisdiction over bankruptcy proceedings, 28 U.S.C. §§ 157 and 1334. Under the latter statute, district courts "have original and exclusive jurisdiction of all cases under title 11," and "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases until title 11." § 1334(a), (b). Under § 157, district courts can refer § 1334(a) and (b) cases to bankruptcy courts. § 157(a). While subject matter jurisdiction is determined by § 1334, the application of § 157(b) and (c) determines the bankruptcy court's authority to act once that jurisdiction is established. *See Valley Historic Ltd. P'ship v. The Bank of New York*, 486 F.3d 831, 839 n.3 (4th Cir. 2007).

The sole issue raised in Kirkland's complaint requested that the bankruptcy court determine the dischargeability of her obligation to pay ECMC the principal of her loan. ECMC has not questioned the bankruptcy court's jurisdiction in this regard, and the bankruptcy court clearly had subject matter jurisdiction to determine the issue of discharge as to the principal of the loan represented by claim no. 9.[6]

However, without separately analyzing its authority to do so, the bankruptcy court proceeded *sua sponte* to adjudicate collection costs and post-petition interest. The bankruptcy court proceeded on this course despite the fact that Kirkland specifically acknowledged in her pleading that she owed post-petition interest to ECMC and excluded that interest from her

---

[6]Because Kirkland sought a determination that the principal obligation had been discharged during her bankruptcy proceeding, the bankruptcy court had jurisdiction under § 1334. In addition, even more directly on point than the subsection identified by the bankruptcy court, § 157(b)(2)(I) lists "determinations as to the dischargeability of particular debts" as constituting a core proceeding. In any event, this component of the bankruptcy court's decision — the nondischargeability of the principal loan obligation — is not at issue on appeal.

request to determine the dischargeability of the underlying principal of the loan. Moreover, the record does not reflect that either party ever requested the bankruptcy court to make a determination as to whether post-petition interest or collection costs were owed to ECMC, much less the amount. The bankruptcy court's May 2008 memorandum opinion is the first occasion where those issues arise.

After the bankruptcy court's memorandum and judgment raised the matters of post-petition interest and collection costs, ECMC challenged that decision in its motion to alter or amend, but did not question the court's jurisdiction to consider those issues. Not surprisingly, the bankruptcy court did not discuss its subject matter jurisdiction to consider the issue of post-petition interest and collection costs when it denied ECMC's motion.

ECMC first questioned subject matter jurisdiction in its brief to the district court, which noted that although ECMC had not raised the issue in the bankruptcy court, subject matter jurisdiction may be questioned at any stage of litigation, including an appeal. ECMC contended that the bankruptcy court "lacked subject matter jurisdiction to determine Kirkland's obligation for interest and collection costs" because those issues "do not arise under, arise in, or relate to cases under Title 11." J.A. 135.

The district court reviewed the concepts of "arising in," "arising under," and "related to" jurisdiction, citing our decision in *Valley Historic Ltd. Partnership v. Bank of New York* (*Valley Historic*), 486 F.3d at 835-36. However, the court's analysis seems to focus on jurisdiction to adjudicate the dischargeability of the principal of the student loan debt, an issue not raised or contested by the parties.[7] The district court

---

[7]Among the court's statements to this end are: "[T]he fact that Kirkland had not paid [claim no. 9] when she brought the adversary proceeding means that there was a 'conceivable bankruptcy administration purpose'

offered only a conclusory statement directed to the separate matter of subject matter jurisdiction over the issues of post-petition interest and collection costs:

> Kirkland would have never had to bring the adversary proceeding against Sallie Mae and ECMC in Bankruptcy Court were it not for the problems that arose out of her closed Chapter 13 bankruptcy case. The post-petition interest and collection costs sought by ECMC in the Bankruptcy Court, for example, would not have even been at issue were it not for the maladministration of the bankruptcy plan and the initial bankruptcy proceeding. The controversy at issue between Kirkland and ECMC would have had no practical existence but for the bankruptcy. Kirkland's case was not only one "related to" a case under Title 11, but also one "arising in" Title 11. The Bankruptcy Court therefore had subject matter jurisdiction to rule on the issues before it.

J.A. 138.

We disagree, and hold that the bankruptcy court lacked subject matter jurisdiction to determine the issues of post-petition interest and collection costs to award ECMC. ECMC's claim to post-petition interest and collection costs is not a matter "under Title 11," nor is it a civil proceeding "arising in," or "related to" Kirkland's bankruptcy petition. This is so because ECMC's claims to post-petition interest and collection costs arose entirely independent from Kirkland's bankruptcy proceeding.

to be served . . . ." J.A. 137. "Because the adversary proceeding would not have been necessary but for the errors contained in the plan and the Trustee's Report, there is a strong enough nexus to uphold the Bankruptcy Court's jurisdiction over this matter." J.A. 137.

ECMC's claim to post-petition interest or collection costs does not "aris[e] under Title 11." A claim "aris[es] under Title 11" if it is a cause of action created by the Bankruptcy Code, and which lacks existence outside the context of bankruptcy. *Aheong v. Mellon Mortgage Co.* (*In re Aheong)*, 276 B.R. 233, 242-46 (B.A.P. 9th Cir. 2002). ECMC's claim for post-petition interest or collection costs does not satisfy this requirement. Post-petition interest is based on a contractual right created by the loan agreement and, as detailed below, the right to collect such unmatured interest is not affected by or part of the bankruptcy proceeding. Collection costs are a contractual obligation, but in the student loan context also based on the statutory right set forth in 20 U.S.C. § 1091a(b)(1), providing that individuals who borrow money for higher education through a title 20 loan are required to pay "reasonable collection costs" in the event of a default. A cause of action to collect on either post-petition interest or collection costs is not found in the bankruptcy code but does clearly exist outside the context of bankruptcy. Thus, neither can be said to be an issue which "arises under Title 11."

A claim to post-petition interest and collection costs is also not a matter "arising in" or "related to" a bankruptcy proceeding. We most recently described "arising in" and "related to" jurisdiction in *Valley Historic*:

> A proceeding or claim "arising in" Title 11 is one that is "not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy. Therefore, a controversy "arises in Title 11" when it would have no practical existence *but for* the bankruptcy.
>
> . . . .
>
> [F]or "related to" jurisdiction to exist at the post-confirmation stage, the claim must affect an integral aspect of the bankruptcy process—there must be a

close nexus to the bankruptcy plan or proceeding. Practically speaking, under this inquiry matters that affect the interpretation, implementation, consummation, execution, or administration of the confirmed plan will typically have the requisite close nexus.

486 F.3d at 835, 836-37 (emphasis in original) (internal quotation marks, alterations, and citations omitted).

ECMC's right to post-petition interest or collection costs does not satisfy either of these jurisdictional requirements. Post-petition interest, by definition, is interest that accrues on an obligation during the pendency of the bankruptcy estate, but after the bankruptcy petition is filed. 11 U.S.C. § 502(b)(2) prohibits post-petition interest—that is, interest that has not matured at the time the bankruptcy petition is filed—from being included in a proof of claim against the bankruptcy estate. *See Kielisch v. Educ. Credit Mgmt. Corp.* (*In re Kielisch*), 258 F.3d 315, 321-22 (4th Cir. 2001) (observing that § 502 prohibits creditors from claiming post-petition interest from bankruptcy estates). Thus, the debtor's obligation to pay post-petition interest pre-exists the bankruptcy petition, does not become part of the bankruptcy proceeding, and is an obligation that survives the debtor's discharge. Once the bankruptcy estate is closed, the debtor remains personally liable for post-petition interest. *See id.* at 325 (citing *Bruning v. United States*, 376 U.S. 358, 363 (1964)).

Based on these principles, ECMC could not have included post-petition interest in its proof of claim to Kirkland's bankruptcy estate, *see id.* at 323, and the Chapter 13 Trustee would have been without authority to pay any such interest. Any claim that ECMC has to post-petition interest exists independent from the bankruptcy, based on the original student loan agreement. Even though some post-petition interest matured during the pendency of the bankruptcy, it cannot be said that this obligation "arose in" the bankruptcy because that obliga-

tion "would have existed whether or not [Kirkland] filed bankruptcy." *See Valley Historic*, 486 F.3d at 836.

ECMC's claim to post-petition interest also does not "relate[] to" Kirkland's bankruptcy. It does not "affect an integral aspect of the bankruptcy process." *Cf. id.* at 836-37. As noted above, the post-petition interest obligation cannot be claimed against the bankruptcy estate and is, instead, a personal obligation of the debtor that remains at the close of the bankruptcy proceeding and after discharge of the underlying debt for the principal. The post-petition interest neither affects nor is affected by Kirkland having filed bankruptcy or the administration of her bankruptcy estate. ECMC's claim to post-petition interest thus lacks the requisite "close nexus" to the bankruptcy proceeding to establish "related to" jurisdiction.

Accordingly, the issue of post-petition interest did not arise in or relate to the bankruptcy proceeding. Kirkland's Complaint acknowledged as much when it asked the bankruptcy court to determine the dischargeability of the principal loan obligation, while admitting that she would still be liable for any post-petition interest that accrued on the loan. The bankruptcy court lacked subject matter jurisdiction to determine the independent issue of whether or how much post-petition interest Kirkland owed ECMC.

Similarly, Kirkland's obligation to pay collection costs, if such an obligation exists, also arose apart from Kirkland's bankruptcy proceeding. Under 20 U.S.C. § 1091a(b)(1), "a borrower who has defaulted on a loan made under this [Title] shall be required to pay, in addition to other charges specified in this [Title], reasonable collection costs."[8]

Here, it is undisputed that Kirkland was not in default at the

---

[8]The issue of whether Kirkland is in default on the ECMC loan is not an issue on appeal and we make no determination of any kind in that regard.

time she filed her petition. Instead, ECMC contends that Kirkland defaulted on her obligation to pay the loan *after* her discharge and the close of her bankruptcy estate. Therefore, any right ECMC has to collection costs associated with a default, if there was such, also arose after Kirkland's discharge and the close of her bankruptcy estate. Consequently, ECMC's claim to collection costs cannot be said to "arise under Title 11," nor does it "aris[e] in" or "relate[] to" Kirkland's bankruptcy case. The claim exists irrespective of Kirkland's bankruptcy and had no effect on that proceeding or her bankruptcy estate. The bankruptcy court thus lacked subject matter jurisdiction to consider whether to award ECMC collection costs, much less the amount of such costs.[9]

## IV.

Accordingly, the district court erred in concluding that the bankruptcy court had subject matter jurisdiction over post-petition interest and collection costs that Kirkland may owe ECMC.[10] For the foregoing reasons, we reverse the district

[9]Because of our resolution of the matter of subject matter jurisdiction, we do not address ECMC's arguments based on the merits of the bankruptcy court's determinations as to the amount of post-petition interest or collection costs to which ECMC may be entitled.

[10]In her appellate brief, Kirkland contends that the case is moot because Sallie Mae transferred the loan at issue to USAF and ECMC no longer has an interest in it. She relies on an August 2008 letter from Sallie Mae as support for this assertion. In its reply brief and during oral argument, ECMC responded to Kirkland's assertion by contending that it continues to hold the promissory note at issue and therefore has an ongoing interest in the matter.

The bankruptcy court was aware of the August 2008 letter because it refers to it in its October 2008 memorandum denying ECMC's motion to alter or amend. However, neither it nor the district court addressed whether the letter made the matter moot, and neither made any factual findings relevant to that determination.

The doctrine of mootness constitutes a part of the constitutional limits of federal court jurisdiction. *United States v. Hardy*, 545 F.3d 280, 283

court's judgment affirming the bankruptcy court's order to deny collection costs and awarding $184.40 in post-petition interest.[11]

*REVERSED*

KING, Circuit Judge, dissenting:

Although I admire and respect the diligence and wisdom of my distinguished colleagues in the panel majority, I am nevertheless convinced that our friend Judge Moon decided this case properly, on both the jurisdictional and merits issues. I would therefore affirm on the basis of his fine opinion for the district court. *See Educ. Credit Mgmt. Corp. v. Kirkland*, No. 6:09-cv-00002 (W.D. Va. Mar. 10, 2009).

I respectfully dissent.

---

(4th Cir. 2008). However, we lack the necessary factual record to determine the significance, if any, of the August 2008 letter on ECMC's interest in the case. Nevertheless, we conclude that it is unnecessary to remand the case for further development of the record on this point based on our determination that the bankruptcy court lacked subject matter jurisdiction over the issues raised on appeal.

[11]The bankruptcy court's decision that Kirkland's obligation on claim no. 9 was not discharged during her bankruptcy and that Kirkland owed ECMC $4,737.27 in principal on that claim was not challenged before the district court or on appeal to this Court. Accordingly, that portion of the bankruptcy court's judgment is not affected by our conclusion that the bankruptcy court lacked jurisdiction to decide post-petition interest and collection costs.