Affirmed by unpublished opinion. Judge KEENAN wrote the majority opinion, in which Judge Wilkinson joined. Judge WYNN wrote a dissenting opinion.
Unpublished opinions are not binding precedent in this circuit.
BARBARA MILANO KEENAN, Circuit Judge:
Herbert A. McFadden and Rosetta E. McFadden (the McFaddens) filed a complaint in a Virginia state court against Flagstar Bank, F.S.B. (Flagstar), Federal National Mortgage Association (Fannie Mae), and Samuel I. White, P.C. (White, P.C.) (collectively, the defendants), asserting various claims relating to the foreclosure and sale of the McFaddens’ home. After the defendants removed the action to the federal district court, the McFaddens filed a motion to remand the case to the state court on the ground that the district court lacked subject matter jurisdiction. The district court summarily denied the motion to remand. After a hearing, the court granted the defendants’ motions to dismiss. Among other things, the court held that the McFaddens failed to state a claim under Federal Rule of Civil Procedure 12(b)(6). The McFaddens filed a timely appeal to this Court.
Upon our review, we hold that the district court did not err in denying the McFaddens’ motion to remand, because the court had diversity jurisdiction over the McFaddens’ claims pursuant to 28 U.S.C. § 1332. We further hold that the district court did not err in dismissing under Rule 12(b)(6) their claim to quiet title and their equitable claim to set aside the foreclosure sale, because those claims lacked a sufficient factual and legal basis.
I.
The McFaddens alleged in their complaint the following facts, which we accept as true for purposes of this appeal.[1] In July 2007, the McFaddens obtained a loan from Flagstar for $116,500, which was secured by a deed of trust on the McFad- *225 dens’ home in Pulaski County, Virginia (the property). The terms of the loan were set forth in a note, in which the McFaddens agreed to make monthly payments of about $900 for 20 years.
The terms of the note established that Flagstar could freely transfer the note to a third party without notice to the McFad-dens. The deed of trust similarly provided for the free transfer of the note and stated that the agreements in the deed of trust “shall bind ... and benefit the successors and assigns” of the lender. The deed of trust named Flagstar as the lender, and named Mortgage Electronic Registration Systems, Inc. (MERS) as the beneficiary and “nominee for Lender and Lender’s successors and assigns.”
At some point before August 2009, Flagstar transferred the note to Fannie Mae, but retained the obligation to receive the loan payments and continued to function as the “servicer” on the loan. After the McFaddens began having trouble making loan payments, Flagstar sent them a letter describing the Home Affordable Modification Program (HAMP), a federal program designed to help certain homeowners who are financially unable to meet their current mortgage obligations. See U.S. Dep’t of the Treasury, Home Affordable Modification Program Guidelines (Mar. 4, 2009)[2]; see also Loan Modification Group, Inc. v. Reed, 694 F.3d 145, 147 (1st Cir.2012) (describing HAMP). The letter stated that if the McFaddens qualified under HAMP and complied with the terms of a “trial period plan,” their loan would be modified, permitting them to avoid foreclosure.
In response to this letter, the McFad-dens submitted documentation to Flagstar seeking to qualify for a loan modification, and the application process continued over a period of many months. According to Flagstar, the process was delayed due to the McFaddens’ failure to submit all the required documents. The McFaddens alleged, however, that Flagstar lost certain documents that they had submitted, and required them to provide various duplicate items on several occasions. Before receiving a final decision on their loan modification application, the McFaddens were notified that because they defaulted on the loan, their property would be sold at auction on March 10, 2011 (the foreclosure sale).
The notice of foreclosure was signed by White, P.C., which was listed as substitute trustee. Attached to that notice was a document executed by Flagstar, stating that it was “the present holder or the authorized agent of the holder of the note secured by the deed of trust,” and that, as such entity, Flagstar had appointed White, P.C. as substitute trustee.
Upon receiving the notice of foreclosure, the McFaddens contacted Flagstar, and a Flagstar representative allegedly informed them orally that “their loan modification was in process, and that no foreclosure would occur.” However, the foreclosure sale proceeded in accordance with the terms contained in the notice. Flagstar was the highest bidder at the sale, and purchased the property for $123,009.
Flagstar assigned its rights in the property to Fannie Mae, after which White, P.C. executed and delivered a deed of trust transferring the property to Fannie Mae (the foreclosure deed). About one week after the foreclosure sale, the McFaddens received written notice from Flagstar that *226 their loan modification application had been denied.
Fannie Mae filed an unlawful detainer action in Virginia state court against the McFaddens, seeking to evict them and to take possession of the property. In response, the McFaddens filed the present action in Virginia state court against the defendants asserting six claims, including the quiet title claim and a claim for equitable relief to set aside the foreclosure sale. The McFaddens also asserted violations of the Virginia Consumer Protection Act (VCPA) against White, P.C.[3] The defendants removed the case to the federal district court, on the basis that the court had federal question jurisdiction under 28 U.S.C. § 1331. According to the defendants, the McFaddens’ claims were governed by the Home Owners Loan Act (HOLA), 12 U.S.C. §§ 1461-1470.
The McFaddens filed a motion to remand, contending that the district court lacked subject matter jurisdiction because the claims presented only questions of state law. In opposition to the motion to remand, Flagstar and Fannie Mae argued that in addition to federal question jurisdiction, the district court had diversity jurisdiction over the action in accordance with 28 U.S.C. § 1332. Flagstar and Fannie Mae contended that even though both the McFaddens and one defendant, White, P.C., were citizens of Virginia, there was complete diversity of the parties because the McFaddens lacked any possible cause of action against White, P.C. and, therefore, under the doctrine of fraudulent join-der, White, P.C.’s citizenship should not be considered.
The district court summarily denied the McFaddens’ motion to remand, and did not state on which basis the court was exercising jurisdiction. The court proceeded to consider the defendants’ motions to dismiss the case. After a hearing, the district court granted the motions to dismiss, concluding that HOLA preempted the McFaddens’ claims and, alternatively, that the McFaddens’ complaint failed to state a claim under Rule 12(b)(6). The McFad-dens timely filed the present appeal.
II.
A.
The McFaddens contend that the district court lacked subject matter jurisdiction over their state law claims. We review de novo questions of subject matter jurisdiction, including questions related to the propriety of removal. Moffitt v. Residential Funding Co., LLC, 604 F.3d 156, 159 (4th Cir.2010). Because of concerns involving principles of federalism, this Court strictly construes a district court’s jurisdiction when considering an issue of removal. Mulcahey v. Columbia Organic Chems. Co., Inc., 29 F.3d 148, 151 (4th Cir.1994).
Under 28 U.S.C. § 1441, “any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant” to the appropriate district court. 28 U.S.C. § 1441(a). The defendants argue that the district court had both federal question jurisdiction and diversity jurisdiction over the McFaddens’ claims.
We first consider whether the district court had jurisdiction over the removed action on the basis of diversity of citizenship of the parties. To invoke the district court’s diversity jurisdiction, the parties *227 must be completely diverse, meaning that none of the plaintiffs shares citizenship with any of the defendants, and the amount in controversy must exceed the jurisdictional threshold. 28 U.S.C. § 1832; Mayes v. Rapoport, 198 F.3d 457, 461 (4th Cir.1999); Owens-Illinois, Inc. v. Meade, 186 F.3d 435, 440 (4th Cir.1999). In the present case, the parties do not dispute that the required amount in controversy is satisfied. Instead, they focus their arguments on the question whether the parties are completely diverse, given the fact that the McFaddens and White, P.C. are both citizens of Virginia.
The McFaddens assert that because White, P.C. is a defendant in their quiet title, equitable, and VCPA claims, the parties to the lawsuit do not meet the requirement of complete diversity. In response, the defendants contend that White, P.C. was a fraudulently joined party, because the McFaddens lacked any possible cause of action against White, P.C. Therefore, the defendants submit that the citizenship of White, P.C. was not a barrier to diversity jurisdiction in this case. See Hartley v. CSX Transp. Inc., 187 F.3d 422, 424 (4th Cir.1999) (explaining that when a party is fraudulently joined, courts disregard that party’s citizenship for jurisdictional purposes). We agree with the defendants’ argument that the parties were completely diverse.
The doctrine of fraudulent joinder permits a federal court to “disregard, for jurisdictional purposes,” the citizenship of non-diverse defendants. Mayes, 198 F.3d at 461. A defendant alleging fraudulent joinder must show either that: (1) “there is no possibility that the plaintiff would be able to establish a cause of action” against the non-diverse party, or (2) there has been “outright fraud in the plaintiffs pleading of jurisdictional facts.” Hartley, 187 F.3d at 424 (internal quotations, emphasis, and citation omitted).
In the present case, the defendants maintain that the citizenship of White, P.C. should be disregarded for jurisdictional purposes because the McFaddens lacked any possible cause of action against White, P.C., the non-diverse party. Thus, as applied here, use of the term “fraudulent joinder” effectively is a misnomer, because application of the doctrine under the present facts “does not reflect on the integrity” of the plaintiff, AIDS Counseling & Testing Ctrs. v. Grp. W Television, Inc., 903 F.2d 1000, 1003 (4th Cir.1990), but merely addresses the adequacy of the plaintiffs’ pleadings.
As a preliminary matter, we consider the McFaddens’ contention that we should refrain from considering whether White, P.C. was a fraudulently joined party, and instead should permit the district court to consider that question in the first instance. We decline this request because, as a court of limited jurisdiction, we have an obligation to determine our own jurisdiction, as well as the jurisdiction of the district court. Stephens v. Cnty. of Albemarle, 524 F.3d 485, 490 (4th Cir.2008) (citing Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 541, 106 S.Ct. 1326, 89 L.Ed.2d 501 (1986)). Thus, we will consider directly the issue of subject matter jurisdiction in this case. See Leimbach v. Allen, 976 F.2d 912, 916 (4th Cir.1992); see also In re Kirkland, 600 F.3d 310, 314-15 (4th Cir.2010) (“Subject matter jurisdiction cannot be forfeited or waived” and can be raised sua sponte by the court) (citation omitted).
Additionally, we observe that the argument regarding fraudulent joinder was raised in the district court in the pleading filed by Flagstar and Fannie Mae opposing remand to the state court. The district court’s failure to address that argument *228 does not preclude this Court from considering it. Cf. Eisenberg v. Wachovia Bank, N.A., 801 F.3d 220, 222 (4th Cir.2002) (explaining that this Court can affirm a judgment on any basis supported by the record). Moreover, on the present record, further development of the facts would not aid our analysis. Therefore, we proceed to consider the question whether the fraudulent joinder doctrine is applicable, thereby permitting the district court to exercise diversity jurisdiction over the case.[4] In conducting this analysis, we resolve all issues of law and fact in the plaintiffs favor. Hartley, 187 F.3d at 424.
As noted above, in the McFaddens’ complaint, they asserted claims against White, P.C. in three different counts, namely, the quiet title claim, the claim for equitable relief to set aside the foreclosure sale, and the VCPA claim.[5] We address each of these claims in turn.
An action to quiet title is “based on the premise that a person with good title to certain real or personal property should not be subjected to various future claims against that title.” Maine v. Adams, 277 Va. 230, 672 S.E.2d 862, 866 (2009). In such an action, a plaintiff seeks to compel an “adverse claimant to prove a competing ownership claim or forever be barred from asserting it.” Id.
In their quiet title claim, the McFaddens asserted that the foreclosure sale was unlawful, because the deed of trust and the appointment of White, P.C. as substitute trustee were invalid. By seeking to void the foreclosure sale, the McFaddens impliedly alleged that neither the purchaser of the property at auction, Flagstar, nor its assignee, Fannie Mae, held good title to the property. Accordingly, in this claim, the McFaddens contended that they remained the true owners of the property.
The McFaddens have not alleged, nor could they, that White, P.C. had any basis for asserting a competing ownership claim to the property. Under Virginia law, a trustee executing a foreclosure takes possession of the property in order to sell it. Va.Code § 55-59(7). As trustee, White, P.C. was divested of any interest in the property after the foreclosure sale when White, P.C. delivered the foreclosure deed conveying the property to Fannie Mae. See Sovran Bank, N.A. v. Creative Indus., Inc., 245 Va. 93, 425 S.E.2d 504, 505 n. 2 (1993) (a “trustee under a deed of trust retains legal title to the property until the deed is delivered”). Thus, the McFaddens’ sole basis for asserting their quiet title claim against White, P.C. rested on their assertion that, under the deed of trust, White, P.C. could *229 not have taken legal possession of the property and transferred it to the auction purchaser Flagstar, or to its assignee, Fannie Mae.
We conclude that there was no possibility that the McFaddens could have prevailed on this claim against White, P.C. The provision of the deed of trust permitting the appointment of a substitute trustee conformed with the requirements of Virginia Code Section 55-59(9). Under that statute, the party secured by the deed of trust or the holder of more than fifty percent of the obligations secured thereby has authority to appoint a substitute trustee. Id.
Flagstar was not prohibited from appointing a substitute trustee simply because Flagstar had assigned the loan to Fannie Mae. Such a transfer, which is permitted under the plain language of the deed of trust and the note, did not impede Flagstar’s ability to serve as the new lender’s agent. See Horvath v. Bank of N.Y., N.A., 641 F.3d 617, 622 (4th Cir.2011) (explaining that entity other than lender had authority to foreclose under Virginia law despite transfer of loan, based on entity’s status as note holder). Therefore, White, P.C. properly was appointed under the deed of trust, and had authority to act as substitute trustee and to perform the attendant duties authorized by Virginia law. See Va.Code § 55-59(7), (9).
We next conclude that the McFaddens lacked any possibility of prevailing on their claim for equitable relief to set aside the foreclosure sale, which they alleged as an alternative to the quiet title claim. In the allegations specifically supporting this claim for equitable relief, the only defendant referenced was Flagstar. The McFaddens asserted that Flagstar made numerous misrepresentations regarding the loan modification program and application process, including that the pending loan modification application would prevent foreclosure of the property. These allegations, which did not mention White, P.C. or its role in the foreclosure sale, plainly did not state a claim against White, P.C., nor can we discern any possible cause of action against White, P.C. related to this claim.
Finally, we hold that the McFaddens lacked any possibility of prevailing on their VCPA claim against White, P.C., which was the sole defendant named in this claim. In the VCPA claim, the McFad-dens alleged that under Virginia Code Section 59.1-198, White, P.C. was a “supplier,” and that the loan and related foreclosure sale were “part” of a “consumer transaction.” [6]
The McFaddens asserted two bases for their allegation that White, P.C. violated the VCPA. First, they asserted that White, P.C. misrepresented that it had been properly appointed as substitute trustee, because Flagstar was not authorized to make that appointment after it assigned the note to Fannie Mae. Second, the McFaddens alleged that White, P.C. misrepresented that it would serve as a fiduciary to the McFaddens, and that White, P.C. breached its fiduciary duties. We address each asserted VCPA violation in turn.
First, the VCPA is inapplicable to any “aspect of a consumer transaction” that is “authorized” under Virginia law. Va.Code § 59.1-199(A). As we already have stated in our above discussion of the McFaddens’ quiet title claim, the appointment of substr- *230 tute trustees and the process for such appointments is set forth in Virginia Code Section 55-59(9), which authorizes the party secured by the deed of trust or the holder of more than fifty percent of the obligations secured thereby to appoint a substitute trustee. Id. As we further explained above, the appointment of White, P.C. as substitute trustee under the deed of trust met the requirements of Virginia law. See id. Therefore, because the appointment of White, P.C. as substitute trustee was valid under Virginia law, the VCPA did not provide a basis in law for this component of the McFaddens’ VCPA claim.
We next consider the second component of the McFaddens’ VCPA claim, namely, that White, P.C. misrepresented that it would act as a fiduciary toward the McFaddens, and that White, P.C. breached its fiduciary duties. However, under Virginia law, the duties of a trustee appointed under a deed of trust are limited and defined by the instrument under which the trustee acts. Warner v. Clementson, 254 Va. 356, 492 S.E.2d 655, 657 (1997). The McFaddens have not alleged that White, P.C. owed them such unspecified fiduciary duties under the terms of the deed of trust, and the VCPA does not provide an independent basis for maintaining a claim based on this vague, unsupported allegation regarding White, P.C. Thus, we hold that the McFaddens lacked any possibility of establishing their claim under the VCPA against White, P.C., because they have presented neither a legal nor a factual foundation that would give rise to any such right of recovery.
Because we conclude that the McFad-dens lacked any possibility of prevailing on their three claims against White, P.C., we hold that, under the fraudulent joinder doctrine, the citizenship of White, P.C. should not be considered for jurisdictional purposes. See Mayes, 198 F.3d at 461. Therefore, we hold that the district court did not err in denying the McFaddens’ motion to remand the action to state court, because the remaining parties were completely diverse.[7] See 28 U.S.C. § 1332(a).
B.
The McFaddens also appeal the district court’s order dismissing two of their state law claims discussed above, namely, their quiet title claim and their claim for equitable relief to set aside the foreclosure sale.[8] The McFaddens contend that the district court erred in concluding that these claims were preempted by HOLA, and, alternatively, in concluding that these claims failed to state a claim under Rule 12(b)(6). We focus our analysis on the court’s dismissal of the claims under Rule 12(b)(6).
We review de novo the district court’s dismissal of a complaint for failure to state a claim. Walters v. McMahen, 684 F.3d 435, 439 (4th Cir.2012). To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must state a plausible claim for relief and allege sufficient facts to establish the elements of the claim. Id. (citations omitted).
As set forth above, in the McFaddens’ quiet title claim, they challenged the validity of the deed of trust and of the appointment of White, P.C. as substitute trustee. They first alleged that the deed of trust improperly named MERS as the beneficiary, when the true beneficiary of *231 the deed of trust was the lender. This contention is without merit, however, because the plain language of the deed of trust sets forth that MERS, as beneficiary, is “acting solely as a nominee for Lender and Lender’s successors and assigns.” As we explained in our decision in Horvath, naming MERS as the beneficiary was valid and served merely to establish a consistent beneficiary that enhanced “the ease with which the deed of trust could be transferred.” 641 F.3d at 620.
The McFaddens additionally alleged in their quiet title claim that the deed of trust, and the appointment of White, P.C. as substitute trustee, were invalid. As we explained above, however, those claims are groundless because the deed of trust providing for the appointment of a substitute trustee, and the appointment of White, P.C. in that capacity, conformed with the requirements of Virginia law. See Va. Code § 55-59(9).
Because of their inability to demonstrate that the deed of trust and the document appointing White, P.C. as the substitute trustee were invalid instruments, the McFaddens have failed to state a valid claim of ownership in the property. See Adams, 672 S.E.2d at 866. Therefore, we conclude that the district court properly dismissed their quiet title claim under Rule 12(b)(6).
In the McFaddens’ claim for equitable relief to set aside the foreclosure sale, they alleged that Flagstar made the following misrepresentations: (1) that Flagstar would provide them with a loan modification if they met certain criteria; (2) that the McFaddens’ loan application materials were incomplete; and (3) that the McFaddens should disregard the notice of foreclosure due to their pending loan modification request. In essence, the McFaddens asserted that they relied on oral promises by Flagstar that it would modify the terms of the loan and that the foreclosure and sale of the property, of which the McFaddens were notified in writing, would not take place.
While any such promises certainly would have been improper, such- alleged oral promises cannot serve as a basis to set aside a foreclosure sale of real property. Under the statute of frauds, as provided under Virginia law, oral promises and contracts affecting real property are not enforceable. Va.Code § 11-2.
Moreover, the McFaddens do not dispute the fact that they defaulted on their loan. The terms of the deed of trust remained in effect and authorized the foreclosure and sale of the property. Therefore, we conclude that the McFaddens failed to state a claim for equitable relief to set aside the foreclosure sale, and that the district court did not err in dismissing this claim under Rule 12(b)(6).[9]
III.
In sum, based on our conclusion that the district court had diversity jurisdiction over the removed action, and that the court correctly determined that the quiet title claim and the claim for equitable relief to set aside the foreclosure sale were subject to dismissal under Rule 12(b)(6), we affirm the district court’s judgment.

AFFIRMED.

. We employ this standard because the case was decided on a motion to dismiss under Rule 12(b)(6). Flood v. New Hanover Cnty., 125 F.3d 249, 251 (4th Cir.1997).

. Available at http://www.treasury.gov/press-center/press-releases/documents/ modification_program_guidelines.pdf.

. The McFaddens also asserted claims of negligence against Flagstar and fraudulent conduct against Flagstar and Fannie Mae.

. The dissenting opinion cites In re Blackwater Security Consulting, LLC, 460 F.3d 576 (4th Cir.2006) to support the position that we should not consider the defendants' diversity jurisdiction and fraudulent joinder arguments. Post at 233. However, the decision in Blackwater is inapposite. In contrast to the present case, the district court in Black-water remanded the removed action to state court for want of jurisdiction. 460 F.3d at 582. On appeal, we held that 28 U.S.C. § 1447(d) barred our review of the remand order. Id. at 595. In a footnote, we explained our refusal to consider the appellant's argument that the court had jurisdiction because appellant was a federal officer, stating that the argument had not been raised in the district court. Id. at 590 n. 8. Here, the issues of fraudulent joinder and diversity jurisdiction were raised in the district court, and the district court exercised its jurisdiction over the removed action without articulating a basis for jurisdiction.

. Our determination whether there is any possibility that the McFaddens would be able to establish a right to relief under these state law claims against White, P.C. is informed by Virginia law. See generally Erie R.R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

. The purpose of the VCPA is to "promote fair and ethical standards of dealings between suppliers and the consuming public.” Va. Code § 59.1-197. We assume without deciding, for purposes of this appeal, that White, P.C. could qualify as a "supplier” engaged in a "consumer transaction” by conducting the foreclosure sale.

. Based on this conclusion, we need not consider the defendants' additional argument that the district court had federal question jurisdiction over the action.

. The McFaddens do not challenge the dismissal of their remaining claims asserted in the complaint.

. Based on this conclusion, we need not consider the district court’s alternative basis for dismissal of these claims, relating to preemption under HOLA.